[No. 15955.   Department Two.   January 4, 1921.]

AMERICAN SAVINGS BANK & TRUST COMPANY, *Appellant*,
v. HELEN LOUISE EARLES et al., *Respondents*.[1]

CORPORATIONS (156)—REPRESENTATION OF DIFFERENT CORPORATIONS
BY SAME PERSON—FRAUD—EVIDENCE—INSUFFICIENCY.  A bank officer
is not personally liable to the bank for the loss sustained through
loans made to a corporation in which he was interested, the loans
being made without complying with the bank's by-law requiring the
approval of the board of directors, when the officer did not conceal
his interest in the borrowing company, all the directors knew of the
loans, and the by-law in question was habitually ignored.

Appeal from a judgment of the superior court for
King county, Smith, J., entered June 29, 1920, dismiss-
ing an action for fraud by a corporate officer, upon
granting a nonsuit at a trial before a jury.   Affirmed.

*Geo. H. Rummens* and *I. N. Smith*, for appellant.

*Kerr & McCord (Wm. Z. Kerr*, of counsel), for
respondents.

TOLMAN, J.—Appellant, as plaintiff, brought this
action against Michael Earles, formerly a member of
its board of directors and of the executive committee
of such board, its vice-president and one of its prin-
cipal stockholders, seeking to hold him personally
liable for losses sustained by the bank on certain loans
made by it to the Hanford Irrigation & Power Com-
pany, while Earles was an officer and stockholder of
the borrowing company.   The case was tried to a jury,
and at the close of plaintiff's evidence a motion for a
nonsuit was interposed, granted, and a judgment of
dismissal entered.   Appellant perfected an appeal to
this court, and thereafter Mr. Earles died, and by stip-

[1]Reported in 194 Pac. 555.

ulation respondents were substituted as defendants and respondents.

Under the theory of appellant's complaint, in order to recover, it must have produced evidence tending to establish its allegations that the plaintiff, acting in his dual capacity, fraudulently procured the loans to be made, knowing the Hanford Company was insolvent, that he might profit therefrom directly or indirectly; or, that for a like selfish purpose he dominated the officers and directors of the bank and prevented them from enforcing the notes against the maker.

It is impossible within reasonable limits to detail the evidence shown by the voluminous record, which we have studied with care, and we doubt whether any good purpose would be served thereby. We think it sufficient, therefore, to say that appellant has wholly failed to present any facts from which a jury might find the insolvency of the Hanford Company at the time the loans were made, in 1909 and 1910, or for a long time thereafter; or that Earles knew it to be insolvent before its affairs were placed in the hands of a receiver in 1915. On the contrary, appellant's evidence clearly shows that, while the Hanford Company was greatly in need of ready money at the time it secured the loans, yet it was a going concern, with assets greatly in excess of its liabilities; that, at about that time, its capital stock was increased and $300,000 of cash capital added, which was sufficient to retire all of its pressing obligations; that negotiations were then under way for the sale of its assets to eastern interests for several million dollars, and that shortly after the loans were made the whole of its capital stock was sold at par for cash to capitalists engaged in a large way in such enterprises.

While interested financially both in the lender and borrower, it does not appear that Earles concealed

anything from, or misrepresented anything to, the lender; and while it might be found or inferred that he did not obtain the formal authorization of the loan by the executive committee of the bank in the manner required by its by-laws, still it clearly appears that such by-law was habitually and customarily ignored by the officials of the bank; that all knew of the loans, none criticized them, and as stated by appellant's principal witness who seems to be the instigator of the action:

"I have already stated that if these loans were brought before the board, in my opinion, they would be ratified without a question about it."

True, this witness asserted that the board was, at all such times, under the domination and control of Earles, but we can find no support for such assertion in the evidence.

The attempt to show that Earles, through the Cascade Construction Company, of which he was the sole owner and which was at one time a considerable creditor of the Hanford Company, actually received the money borrowed, in whole or in part, failed entirely and the incidental benefit which he received from the loans as a stockholder of the Hanford Company, even though the presumption be against the good faith of such transactions generally, under the facts shown in this record, was a legitimate one.

We find no fact, or reasonable inference from any fact, which would justify a jury in finding that Earles sought in any manner to delay or prevent the bank from enforcing payment against the Hanford Company, and it reasonably appears that the bank officers, other than Earles, thought the loan a good one and extended the notes or delayed enforcing payment because they felt entirely safe in so doing.

We find no error in excluding the testimony as to complaints made to, and action taken by, the state bank examiner long after the loans were made, and fail to see how anything then done by the bank examiner could throw any light upon the issues to be determined.

We find no evidence admitted or offered which would sustain a verdict in appellant's favor.

The judgment is affirmed.

HOLCOMB, C. J., MOUNT, MITCHELL, and MAIN, JJ., concur.